UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
FRANCISCO JUSINO,                        :
                                         :
                    Petitioner,          :
                                         :    08 Civ. 8402 (BSJ)
             v.                          :
                                         :    **Opinion and Order**
UNITED STATES OF AMERICA,                :
                                         :
                    Respondent.          :
----------------------------------------x

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____         │
│ DATE FILED: 7/15/10         │
└─────────────────────────────┘
```

On October 1, 2008, Francisco Jusino ("Jusino") submitted a

Petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2255, seeking to Vacate, Set Aside, or Correct his sentence of

135 months' imprisonment followed by five years of supervised

release.   The Court is also in receipt of Jusino's Motion for

Entry of Default against the United States of America (the

"Government"), filed November 16, 2009, and his Motion to Amend

or Withdraw his habeas Petition, filed December 9, 2009.   For

the reasons stated below, Jusino's Petition and Motions are

DENIED in their entirety.

### Background[1]

Jusino was arrested by DEA agents on January 30, 2003 after

attempting to purchase six kilograms of cocaine from a

confidential informant.   Following his arrest, Jusino

---

[1]     All findings of fact made by the Court in this Order are based on the
Court's assessment of Petitioner's filings, including an affidavit
filed by Petitioner on October 1, 2008, and affidavits filed by two of
Jusino's counsel, David Touger ("Touger") and Richard Jasper ("Jasper")
in support of the Government's Opposition to the instant Petition.

1

acknowledged that he intended to sell the six kilograms of
cocaine to another individual for $20,000 per kilogram.   Jusino
also acknowledged having distributed approximately two kilograms
of cocaine several days earlier, as well as having distributed
another ten kilograms of cocaine in September 2002.   Indictment
03 Cr. 415 (BSJ), which was filed on April 1, 2003, charged
Jusino with "unlawfully, intentionally, and knowingly . . .
attempt[ing] to distribute and posses with intent to distribute
. . . five kilograms and more of cocaine" in violation of Title
21, United States Code, Section 846.   (Indictment at 1.)

## I. Plea Agreement I

Jusino was initially represented by retained counsel, David
Touger ("Touger"), who engaged in pre-Indictment negotiations
with the Government on Jusino's behalf.   According to both
Touger and the Government, the result of those negotiations was
an unofficial, draft plea agreement, dated March 10, 2003 ("Plea
Agreement I").   (See Gov't Opp'n Ex. A ("Touger Aff.") ¶ 5); see
also Gov't Opp'n Ex. B at 4-9 ("Plea Agreement I").)   Plea
Agreement I stipulated that Jusino's base offense level,
pursuant to United States Sentencing Guidelines ("U.S.S.G.")
Section 2D1.1(c)(4), was 32, based on a drug weight of more than

5 but less than 15 kilograms of cocaine.[2] (Plea Agreement I at

2.)  This draft plea agreement further stipulated a Criminal

History Category of III and that, pursuant to U.S.S.G. Section

3E1.1, the offense level should be reduced by three levels for

acceptance of responsibility, resulting in a Sentencing

Guidelines offense level of 29.  (Id. at 2-3.)  Plea Agreement I

set forth a Stipulated Sentencing Guidelines range of 120 to 135

months' imprisonment.  (Id. at 3.)

    Plea Agreement I remained unsigned.  As further discussed

below, Touger was fired by Jusino in late March/early April

2003.  (See Touger Aff. ¶ 7.)  Touger was then replaced by

another retained counsel, Barry Zone ("Zone"), prior to Jusino's

April 15, 2003 arraignment.  Then, on or about September 17,

2003, Jusino retained Richard Jasper ("Jasper") to replace Zone.

## II. Plea Agreement II

    On November 3, 2003, Jusino pled guilty before this Court

to the single count for which he was indicted, pursuant to a new

written plea agreement ("Plea Agreement II").  In Plea Agreement

II, the parties stipulated that the base offense level, pursuant

to U.S.S.G. Section 2D1.1(c)(4), was 34, based on a drug weight

---

[2]    Plea Agreement I only required Jusino to plead guilty in reference to
the six kilograms of cocaine that Jusino was arrested for attempting to
purchase with intent to distribute on January 30, 2003.

3

of more than 15, but less than 50 kilograms of cocaine.[3]

(Petr.'s Mem. Ex. B ("Plea Agreement II") A.13.)   The parties

further stipulated that the offense level should be reduced by

three levels for acceptance of responsibility, pursuant to

U.S.S.G. Section 3E1.1, resulting in an applicable Sentencing

Guidelines offense level of 31.   (Id.)   Additionally, the

parties agreed that Jusino had six criminal history points,

placing him in Criminal History Category III.   (Id. A.13-14.)

As a result of these calculations, the parties stipulated to a

Sentencing Guidelines range of 135 to 168 months' imprisonment.

(Id. A.14.)   Jusino further agreed that he would not "file a

direct appeal, nor litigate under Title 28, United States Code,

Section 2255 and/or Section 2241, any sentence within or below

the Stipulated Sentencing Guidelines Range of 135 to 168

months."   (Id. A.15.)   In consideration of Jusino's plea, the

Government agreed not to file a prior felony information

pursuant to Title 21 U.S.C. Section 851.   (Id. A.12.)

On January 20, 2006, this Court sentenced Jusino to 135

months' imprisonment to be followed by five years of supervised

release, plus a special assessment of $100.   This sentence fell

---

[3]   During the plea negotiations that led to Plea Agreement II, the
Government communicated to Jasper that it was now only willing to
accept a plea agreement in which Jusino would plead guilty to not only
the six kilograms of cocaine that Jusino was charged with having
attempted to purchase on January 30, 2003, but also to the additional
twelve kilograms that the Government alleged that Jusino had admitted
to during his post-arrest statement on January 31, 2003.   (See Gov't
Opp'n Ex. G ("Jasper Aff.") ¶ 8.)

at the very bottom of the Stipulated Guidelines range of 135 to
168 months' imprisonment.  After waiting six months, Jusino
unsuccessfully appealed, on grounds not relevant here, to the
Second Circuit Court of Appeals and then the United States
Supreme Court, which denied his Petition for a Writ of
Certiorari on February 25, 2008.

Jusino filed the instant Petition with this Court on
October 1, 2008.  The Court is also in receipt of an Opposition
filed by the Government on November 6, 2009.

## Discussion

### I. Jusino's Section 2255 Waiver is Valid and Enforceable

The Second Circuit has held that knowing and voluntary
waivers of the right to challenge a sentence under Section 2255
are valid and enforceable.  See United States v. Salcido-
Contreras, 990 F.2d 51, 53 (2d Cir. 1993) ("In no circumstance .
. . may a defendant, who has secured the benefits of a plea
agreement and knowingly and voluntarily waived the right to
appeal a certain sentence, then appeal the merits of a sentence
conforming to the agreement.  Such a remedy would render the
plea bargaining process and the resulting agreement
meaningless."); see also Gumbs v. United States, 8 F. Supp. 2d
882, 883 (S.D.N.Y. 1998) (holding that a Section 2255 "waiver is
enforceable and constitutes a separate ground for dismissal of

the Petition" when an imposed sentence fell within the
stipulated Guidelines range).

In the instant case, Jusino explicitly agreed that he would
not "file a direct appeal, nor litigate under Title 28, United
States Code, Section 2255 and/or Section 2241, any sentence
within or below the Stipulated Guidelines Sentencing Range of
135 to 168 months." (Plea Agreement II A.15.)  Moreover, the
record establishes that his waiver was knowing, voluntary, and
intelligent.  First, the Court conducted a thorough allocution
and specifically asked Jusino whether he understood that he was
giving up his right to appeal or in any other way litigate his
sentence if it fell within the range stipulated by Plea
Agreement II, and Jusino responded affirmatively.  See Gov't
Opp'n Ex. I ("Plea Tr.") 12-13.)  Second, Jusino confirmed that
(1) he discussed Plea Agreement II with his attorney, (2) he
fully understood the plea agreement, and (3) he had not been
induced or forced in any way to enter into Plea Agreement II.
(Id. at 13.)  Third, Jusino admitted that he knew what he was
doing was "wrong and illegal" and that he was entering his
guilty plea because he was in fact guilty of the offense with
which he was charged.  (Id. at 15.)

However, a "waiver of appellate or collateral attack rights
does not foreclose an attack on the validity of the process by
which the waiver has been produced, here, the plea agreement."

Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195
(2d Cir. 2002) (internal citations omitted).  Accordingly, the
district court does not automatically enforce Section 2255
waivers in the face of ineffectiveness of counsel claims, as
such claims may call into question the very legitimacy of the
Section 2255 waivers.  United States v. Concepcion, No. 09 Civ.
4537, 2009 WL 4884095, at *2 (S.D.N.Y. Dec. 16, 2009) (internal
quotations omitted).

Because, as further discussed below, Jusino's claims that
his counsels were ineffective are without merit, his waiver is
valid and enforceable.

## II. Jusino's Claims Fail on the Merits

Jusino bases his Petition to Vacate, Set Aside, or Correct
his sentence on the claim that he received constitutionally
ineffective assistance of counsel from either Jasper, the last
attorney who represented him, or Touger, his first attorney.[4]

## A. Jusino Must Overcome the Strong Presumption that Counsels'
## Conduct was Reasonable and Affirmatively Prove Prejudice to
## Demonstrate Ineffective Assistance of Counsel

---

[4]     In his Petition, Jusino does not claim that he received
constitutionally ineffective assistance of counsel from Touger.
However, in his subsequent Motion to Withdraw or Amend Petition, Jusino
alleges that Touger never informed him of Plea Agreement I and thus
that Touger's conduct may have also caused him to receive ineffective
assistance of counsel.  (See Petr.'s Mot. to Amend ¶¶ 3-4, 7.)  As
Jusino is a pro se litigant, and in light of the Second Circuit's tenet
of liberally construing pro se petitioners' pleadings; see, e.g.,
Billy-Eko v. United States, 8 F.3d 111, 117 (2d Cir. 1993); the Court
considers ineffective assistance of counsel claims against both Touger
and Jasper in the instant Order.

A claim of ineffective assistance of counsel under the Sixth Amendment must satisfy the two-pronged test articulated in Strickland v. Washington, 466 U.S. 668 (1984). Accordingly, a movant must show (1) that counsel's performance fell below an objectively reasonable standard of performance and (2) that the deficient performance prejudiced the outcome of the proceeding. See United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990). Regarding the first prong, the Court "must indulge a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Bell v. Miller, 500 F.3d 149, 156 (2d Cir. 2007). The Court must also bear in mind that "there are countless ways to provide effective assistance in any given case." Aguirre, 912 F.2d at 560 (citing Strickland, 466 U.S. at 689).

### B. Counsels' Representations of Jusino Were Not Constitutionally Ineffective

In articulating counsel's responsibilities with regard to plea offers, the Second Circuit has required attorneys to convey plea offers to a defendant and to "give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996) (quotation marks and citations omitted); see also Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000) (finding that an attorney discharges his duty by informing defendant of

terms of a plea offer, strengths and weaknesses of the case
against him, and alternative sentences to which he will most
likely be exposed). However, "[c]ounsel's conclusion as to how
best to advise a client in order to avoid, on the one hand,
failing to give advice and, on the other, coercing a plea enjoys
a wide range of reasonableness because representation is an art,
and there are countless ways to provide effective assistance in
any given case." Purdy, 208 F.3d at 45 (internal quotations
marks and citations omitted).

     In the instant case, Jusino's ineffective assistance of
counsel argument is premised on the claim that Jasper failed to
reasonably investigate and/or communicate to Jusino the terms of
Plea Agreement I. Jusino contends that Jasper's purported
failure to investigate was objectively unreasonable because Plea
Agreement I offered a more favorable Sentencing Guidelines range
than Plea Agreement II, and that, between the two plea offers,
he clearly would have chosen to plead guilty to the more
favorable plea bargain. The Court finds this claim to be
without merit.

     The cases on which Jusino relies to support his argument
that Jasper's failure to investigate and communicate the
existence of a prior plea agreement constitutes ineffective
assistance do not support his position. It is true that an
attorney's failure to communicate a plea offer to his client, or

to advise his client adequately about a plea offer, may constitute constitutionally deficient performance. See, e.g., Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999); United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998). And it is correct that a defendant may establish such a Sixth Amendment violation by proving that his attorney in fact failed to communicate a plea offer or failed to provide adequate advice about the plea offer and his sentencing exposure. See Gordon, 156 F.3d at 380; Boria, 99 F.3d at 496-98. The facts here do not support either of those situations.

Jusino's arguments that Jasper's failure to discover Plea Agreement I was objectively unreasonable is based upon the flawed premise that Plea Agreement I was an existing plea agreement at the time Jasper represented him.[5] Neither Jusino nor the record provide any evidence that Plea Agreement I was valid at the time of Jasper's retention.

### 1.   Touger Communicated Plea Agreement I to Jusino

Jusino has submitted a sworn affidavit saying that he was never shown Plea Agreement I—which offered a sentence of 120 months at the low end of its Stipulated Sentencing Guidelines range—until after pleading guilty to Plea Agreement II and

---

[5]      Jasper was in error when he stated, in his May 22, 2008 letter to Jusino, that "there were no plea agreements offered to [Jusino] by the Government prior to" Plea Agreement II, (see Petr.'s Mem. Ex. B ("Jasper Ltr."),) but the record establishes that the Plea Agreement I offer was withdrawn before Jasper was retained as counsel.

receiving a sentence of 135 months. (See Petr.'s Aff. ¶¶ 5-6;
see also Petr.'s Mot. to Amend ¶ 7 ("Petitioner would aver that
the offer in plea negotiations of 15 months less (Plea I) which
was never conveyed to the Petitioner by Attorney Touger who had
negotiated the plea with the government[.]").)

Touger, in turn, has submitted a sworn affidavit in which
he states that he both communicated the terms of Plea Agreement
I to Jusino and advised him about it in late March/early April
2003. (Touger Aff. ¶¶ 6-7.) Touger further states that upon
advising Juniso of the possibility of pleading guilty pursuant
to Plea Agreement I, Jusino rejected the offer and, on that same
day, terminated Touger's representation of him. (Id. ¶ 7.)
After being terminated, Touger informed the Government that
Jusino had rejected the proposed plea bargain and that he would
no longer be representing Jusino. (Id. ¶ 8.)

While Touger does not have a present specific recollection
of the events at issue, he states that his testimony is based on
a review of his client files as well as on a letter that he
filed with the New York State Bar Association ("NYSBA") in
September 2004—a time closer to his representation of Jusino—in
response to a complaint Jusino filed with the NYSBA. (Touger
Aff. ¶ 4.) He also states that the statements made in his
letter accord with his consistent practice in criminal matters.
(Id. ¶ 9.) See, e.g., Johnson v. Breslin, No. 06 Civ. 5052,

11

2006 WL 3111787, at *6 (E.D.N.Y. Sept. 28, 2009) (finding that, despite counsel's lack of a specific recollection, in a Section 2254 habeas case, counsel's common practice of always conveying plea offers in criminal matters was a sufficient basis to credit counsel's testimony that he did convey a plea offer to his client).[6]

The Second Circuit has held that not all factual issues require an evidentiary hearing. See Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001). Rather, where a petitioner's ineffective assistance of counsel claim is generic and based solely on his own self-serving and improbable assertions, the Court has discretion to determine whether an evidentiary hearing is necessary or if, alternatively, the factual issues may be resolved solely on the affidavits or the documentary record. Id.

In the instant case, the Court finds that in-court testimony "would add little or nothing to the written submissions" of Jusino and Touger and "would not offer any reasonable chance of altering [the Court's] view of the facts."

---

[6]  Additionally, Touger's version of the events is at least in part corroborated by a letter submitted to the Court by Jusino himself prior to the instant Motion. In this letter, Jusino notified the Court: "David Touger came and take my case and come to this facility just for tell me that, all I can do is cooperated with the government if not they going to give me too much time." (Gov't Opp'n Ex. C ("Jusino Ltr.") at 13.) The Government argues, and the Court agrees, that this letter is evidence that Touger met with Jusino to discuss Plea Agreement I.

Id. at 86.   Therefore, no testimonial hearing is necessary.
Because Jusino's version of the facts is both conclusory and
apparently contradicted by his January 6, 2005 letter to the
Court, the Court credits Touger's version of the events.

Accordingly, the Court finds that Jusino was made aware of
and advised on Plea Agreement I by Touger and that Jusino
rejected the agreement.   As such, Plea Agreement I remained
unsigned by Jusino, Touger, and the Assistant United States
Attorney handling the prosecution at the time that Jusino
dismissed Touger as his counsel.   Further, Jusino has failed to
prove that Touger's performance was unreasonable.

2.   Plea Agreement I Was No Longer Available When Jasper Took
Over Jusino's Representation

After taking over Jusino's representation from Touger, Zone
repeatedly stated to the Court that plea negotiations with the
Government were ongoing and that the parties expected to reach a
disposition in the near future.   (See Gov't Opp'n Ex. D ("June
24, 2003 Pretrial Conference Tr.") at 2:12-19, 3:6-8; Gov't
Opp'n Ex. E ("Zone Facsimile").)   Jasper, who took over Jusino's
representation in September 2003, has submitted a sworn
declaration stating that he sought to obtain a plea offer for
Jusino that would include the lowest possible sentence the
Government would offer. (Gov't Opp'n Ex. G ("Jasper Aff.") ¶ 7.)
However, the landscape of the case had changed significantly

13

between the time of Touger's initial communication of the offer
of Plea Agreement I to Jusino in March 2003 and Jasper's
retention. As Jasper avers, the Government informed Jasper that
it was unwilling to negotiate the quantity of cocaine for
purposes of the plea agreement, and would only offer a plea deal
that included the additional twelve kilograms of cocaine as
relevant conduct. (Id. ¶ 8.)

In light of Touger's affirmation that Jusino rejected Plea
Agreement I, Jasper's affirmation that the Government refused to
negotiate the quantity of cocaine in September 2003, and
Jusino's inability to offer any evidence indicating that Plea
Agreement I was still available to him six months after it had
originally been offered, the Court finds that Plea Agreement I
was not available at all during the period of Jasper's
retention. Therefore, after having been notified by the
Government that it was unwilling to negotiate the amount of
cocaine, it was reasonable for Jasper to cease any investigation
he had been conducting into the possible existence of a prior
plea deal that would have allowed Jusino to admit only to
conduct involving a lesser amount of cocaine, as even if he had
discovered such an offer, it was clearly off the table at that
point. As such, Jasper communicated the only plea offer that
was available to Jusino during Jasper's retention—Plea Agreement

14

II.[7]  And since Plea Agreement I was unavailable during the
entire period of Jasper's retention, there was nothing
objectively unreasonable about Jasper advising Jusino to accept
Plea Agreement II.

As the Supreme Court has held, the standard for evaluating
the validity of a guilty plea is "whether the plea represents a
voluntary and intelligent choice among the alternative courses
of action open to the defendant."  North Carolina v. Alford, 400
U.S. 25, 31 (1970) (emphasis added) (internal citations
omitted).  As discussed above, at the time of the alleged
ineffectiveness, pleading guilty to Plea Agreement I was not an
alternative course of action open to Jusino.  Therefore, any
ineffectiveness, even if established, would not render Jusino's
plea to Plea Agreement II involuntary or unintelligent.

Because neither Touger nor Jasper's representation of
Jusino fell below an objectively reasonable standard of
performance, Jusino has failed to make a sufficient showing
under the first prong of the Strickland test.  The Court is,
therefore, not required to address the prejudice prong of the

---

[7]  As further set forth in his affirmation, Jasper advised Jusino of the
advantages and disadvantages of pleading guilty pursuant to Plea
Agreement II, including the potential sentences that Jusino would face
if he accepted the deal as opposed to if he was convicted after trial.
(Jasper Aff. ¶ 11.)  Jasper's advice of the pros and cons included
explaining to Jusino that if he proceeded to trial, the Government
would likely file a prior felony information, substantially increasing
the mandatory minimum sentence Jusino would face if he was convicted
after trial.  (Id.)

Strickland test. See Ordenes v. United States, No. 05 Civ. 8968, 2007 WL 1766772, at *10 (S.D.N.Y. June 9, 2007) ("A court need not address both prongs if a petitioner fails to make a sufficient showing on one"). For this reason alone, Jusino's Petition is DENIED in its entirety.

## III. Jusino's Motions to Amend and for Entry of Default Are Denied

### A. Motion for Entry of Default

Jusino filed his Petition on October 1, 2008. On May 27, 2009, this Court issued an order directing the United States Attorney for the Southern District of New York to file its Answer to Jusino's Petition by July 27, 2009. That Order further directed the Clerk of the Court to serve, by Certified Mail, Return Receipt Requested, a copy of that Order as well as Jusino's underlying Petition on the Government.

The Court was later informed that the Clerk failed to serve notice as directed in the Court's Order. (See Order August 17, 2009.) Lacking notice of the May 27, 2009 Order, the Government was unable to meet its July 27, 2009 deadline.

This Court then directed the Government to file its Answer by October 16, 2009. On October 15, 2009, the Court granted the Government's request for an extension of time to October 30, 2009. On October 30, 2009, the Court granted the Government another extension of time, to November 6, 2009.

16

Because of the Government's failure to timely file its Answer to his Petition, Jusino has moved to have the Clerk of the Court enter a Default against the United States, pursuant to Rule 55(a). See Fed. R. Civ. P. 55(a). However, it appears that the Government's failure to timely answer Jusino's Petition was caused by a mistake at the Clerk's office rather than a conscious disregard of the Court's Order. See, e.g., Davis v. New York, No. 90 Civ. 6170, 1991 WL 156351, at *2 n.2 (S.D.N.Y. Aug. 6, 1991).

Accordingly, Jusino's motion for an entry of default is DENIED.

### B. Motion to Amend is Moot and Must Be Denied

On December 9, 2009, Jusino submitted a Motion to Amend seeking to alter the relief requested in his initial Petition. Specifically, Jusino sought to change his requested relief from a withdrawal of his guilty plea to a fifteen month sentence reduction. Jusino filed this motion because, since filing his Petition, he has realized that if his plea were successfully withdrawn, he would lose the main benefit of the actual plea. (See Petr.'s Mot. Amend ¶¶ 4-7.) Specifically, Jusino reasons that if the Court were to grant his Petition, the Government would still be able to prosecute him; however, it would now be able to file a prior felony information against him pursuant to Section 851. This would subject Jusino to a statutory mandatory

17

minimum sentence of 240 months' imprisonment if convicted after
trial.   Accordingly, Jusino now requests different relief: a
fifteen month sentence reduction, representing the difference
between the low ends of the applicable Sentencing Guidelines
ranges of Plea Agreement II and Plea Agreement I (135-168 months
and 120-135 months).

Because the Court has rejected Jusino's claim that his
counsels were ineffective, he is not entitled to the remedy of a
fifteen month reduction in his sentence.   Therefore, his Motion
to Amend is futile and is DENIED.

### Conclusion

For the reasons set forth above, Jusino's Petition for a
writ of habeas corpus, his Motion to Amend the Petition, and his
Motion for Entry of Default are DENIED.   As Jusino has failed to
make a substantial showing of the denial of a constitutional
right, the Court declines to issue a certificate of
appealability.   See 28 U.S.C. § 2253.

The Clerk of the Court is directed to close this case.

18

SO ORDERED:

_____
Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated:     New York, New York
           July 14, 2010